OPINION
Defendant-appellant William Joseph Calabria appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of assault in violation of R.C. 2903.13, a felony of the fourth degree, and one count of resisting arrest in violation of R.C. 2921.33, a felony of the fifth degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On April 14, 1999, the Stark County Grand Jury indicted appellant on one count of assault in violation of R.C. 2903.13, a felony of the fourth degree, and one count of resisting arrest in violation of R.C. 2921.33, a felony of the fifth degree. With respect to the assault charge, the indictment specifically alleged that appellant had knowingly caused or attempted to cause physical harm to John Clark, a peace officer, while Clark was in the performance of his official duties. At his arraignment on April 16, 1999, appellant entered a plea of not guilty to the charges contained in the indictment. Thereafter, a jury trial commenced on May 24, 1999. The following evidence was adduced at trial. In April of 1999, appellant was residing in an apartment located at 424 17th Street S.E. in the City of Canton which was rented by Jennifer Lowe. Both Laura Hair and her son, Travis, were residing in the same apartment while their home was being repaired. On the night of April 5, 1999, at approximately 9:00 P.M., Travis Hair contacted the Canton police after appellant locked himself in the rental apartment and threatened to harm Travis. After confirming that the apartment doors were locked, Canton police officers Michael Walker and Randy Weirich knocked at both the side door and the front door of the apartment while yelling in an attempt to contact appellant. At trial, Officer Walker testified that appellant "told us that he was not coming out and that he wanted us to come in because he was going to kill us, he would stab us." Transcript of Trial at 167. Appellant, who was intoxicated at the time and screaming obscenities, also threatened to cut off his own penis and to kill Travis Hair. The two officers were able to observe through a kitchen window that appellant was armed with an eight inch knife with serrated edges. According to Officer Walker, appellant made "sweeping motions" with the knife and pretended to jab at the officers. Transcript of Trial at 172. Appellant refused to allow the officers to enter the apartment without a warrant. Because of the threat of violence, the two officers called for their supervisor, Sergeant Cynthia Goldsmith, as well as a canine officer. After receiving a key to the apartment from Laura Hair, the officers entered the apartment while Sergeant Goldsmith remained outside. John Clark, the canine officer, entered the apartment first with his dog, Magnum, on a lead in his left hand and a flashlight in his right hand. Before entering the apartment, Officer Clark had given two canine warnings which appellant failed to acknowledge. Officer Walker followed Clark with his weapon drawn to provide protection for Clark if appellant should attack. Officer Weirich was third in line. Upon entering the darkened kitchen with his flashlight flashing off and on, Officer Clark located appellant, who was standing in a stairway right beside a door. Appellant had a steak knife with serrated edges in his right hand and two other knives were lying on the top step of the stairs within three feet of appellant. Officer Clark testified at trial that "[w]hen I first approached the Defendant, I gave him one more canine warning that was to make my presence known and give him a chance to give himself up." Transcript of Trial at 139. Officer Clark also told appellant to drop the knife and to lie down on the floor. Appellant, who ignored Officer Clark's order, then lunged forward towards Officer Clark and threatened to "kill both of you mother fuckers." Transcript of Trial at 140. Around the same time, a second dog, which previously had not been noticed by the officers, started to attack Magnum, Officer Clark's dog. After Officer Walker kicked the second dog out of the way, Officer Clark struck appellant over the head with his flashlight. Magnum, Officer Clark's dog, then knocked appellant backwards, causing appellant to fall down some stairs. Magnum bit appellant several times in the legs and the arms until the officers handcuffed appellant. Once appellant was arrested, "[i]t was like his demeanor changed. He was a nice, very nice person." Transcript of Trial at 181. Appellant was very apologetic and claimed to be sorry for his actions. After being treated at a hospital for his injuries, appellant was transported to the county jail. Appellant, who was tested twice, had a blood alcohol content of between .66 and .451. At trial, appellant, who testified that he has an alcohol problem and had consumed a liter of whiskey and over a half of a fifth of vodka on the day in question, testified in his own defense. Appellant denied having a steak knife on his person at any time, and testified that the weapon in his hand was a dirty butter knife. According to appellant, Officer Clark struck appellant over the head with a flashlight for no reason while appellant was going to put the dirty butter knife in the sink. While appellant admitted that he was belligerent and hollering at the officers before they entered the apartment, he denied threatening to harm anyone. He also denied lunging at Officer Clark with his knife or resisting arrest. At the conclusion of the evidence and the end of deliberations, the jury returned on May 25, 1999, with a verdict finding appellant guilty of resisting arrest and guilty of assault. The jury further found that appellant had assaulted a peace officer while in the performance of his official duties. On June 3, 1999, appellant was sentenced to prison for thirteen months on the charge of assault in violation of R.C. 2903.13, a felony of the fourth degree, and to prison for ten months on the charge of resisting arrest in violation of R.C. 2921.33, a felony of the fifth degree. The two sentences were to be served concurrently. Appellant's sentence for resisting arrest was stayed by the trial court, which ordered that appellant be placed on three years of community control upon his release from prison. A Judgment Entry memorializing appellant's sentence was filed on June 3, 1999. It is from his conviction and sentence that appellant prosecutes his appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE APPELLANT'S RIGHT TO A FAIR TRIAL, WHEN IT DENIED UPON PROPER REQUEST A JURY INSTRUCTION ON THE LESSOR [SIC] INCLUDED OFFENSE OF DISORDERLY CONDUCT.
 ASSIGNMENT OF ERROR II APPELLANT'S CONVICTION ON ONE COUNT RESISTING ARREST IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I
Appellant, in his first assignment of error, argues that the trial court erred when it refused to instruct the jury on the lesser included offense of disorderly conduct. Appellant had requested an instruction on disorderly conduct at the close of trial and subsequently objected on the record to the trial court's failure to include such an instruction in the charge to the jury. Appellant specifically contends that disorderly conduct is a lesser included offense of assault and that, under the facts of the case sub judice, the trial court erred in not instructing the jury on both disorderly conduct and assault. R.C. 2903.13, which defines assault, provides in relevant part as follows: (A) No person shall knowingly cause or attempt to cause physical harm to another . . .
Pursuant to R.C. 2901.22(B), a person acts knowingly when he is aware that his conduct will probably cause a certain result. An assault on a peace officer is a felony of the fourth degree. R.C.2903.13 (C)(3). R.C. 2917.11(A), which defines disorderly conduct, provides in relevant part as follows: "A) No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:
 (1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior.
 (2) Making unreasonable noise or an offensively coarse utterance, gesture, or display, or communicating unwarranted and grossly abusive language to any person;
 (3) Insulting, taunting, or challenging another, under circumstances in which such conduct is likely to provoke a violent response;
 (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender."
Appellant, at the close of trial, had specifically requested an instruction on the above subsections of R.C. 2917.11. See Transcript of Trial at 273-275. In State v. Deem (1988), 40 Ohio St.3d 205, at paragraph three of the syllabus, the Supreme Court set forth the following three-part test to determine when an offense may be a lesser-included offense of another offense: An offense may be a lesser included offense of another if (I) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.
Appellant is correct that the charge of disorderly conduct is a lesser included offense of assault in certain circumstances. See, for example, State v. Reynolds (1985), 25 Ohio App.3d 59 and State v. Roberts (1982), 7 Ohio App.3d 253. However, assuming, arguendo, that disorderly conduct meets the three prong test set forth in Deem, supra., appellant still may not be entitled to a jury instruction on disorderly conduct. A charge on a lesser included offense is required only where the evidence presented at trial would reasonably support an acquittal on the greater crime and a conviction on the lesser included offense. State v. Thomas (1988),40 Ohio St.3d 213, paragraph two of the syllabus and State v. Wilkins (1980), 64 Ohio St.2d 382. The evidence regarding the lesser included offense must be considered in the light most favorable to the defendant. Wilkins, supra. at 388. Even if, in the case sub judice, we find that disorderly conduct was a lesser included offense of assault under the Deem test, the evidence presented, considered in the light most favorable to appellant, was insufficient for the jury to return a guilty verdict for disorderly conduct and not assault. Contrary to appellant's assertion, the jury could not reasonably have concluded, based upon the evidence adduced at trial, that appellant recklessly caused inconvenience, annoyance, or alarm to Officer John Clark by engaging in violent or turbulent behavior, or by threatening Officer Clark with harm. Nor could the jury have reasonably concluded that appellant recklessly caused inconvenience, annoyance or alarm to Officer Clark by making unreasonable noise or an offensive coarse utterance or gesture, by insulting, taunting, or challenging Officer Clark under circumstances in which such conduct is likely to provoke a violent response, or by "creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender." See R.C. 2917.11(A)(1),(2),(3), and (5). As is stated above, appellant testified at trial on his own behalf. While appellant testified that he was belligerent "when I was hollering through the door at them [the officers]" and that he was taunting the officers while they were knocking on the apartment door, he denied threatening anyone's life or lunging at Officer Clark. Transcript of Trial at 243-244. With respect to the incident involving Officer Clark, appellant specifically testified as follows:
 Q. When did you first become aware that the police officers were inside the house?
 A. When I was headed toward the kitchen to put the knife that I found on the living room floor in the sink. And when the officers come up the stairs, I had a knife in my hand and he asked me what I was going to do with it.
 Q. Now, when you say "he," meaning the officer?
A. Uh-huh.
 Q. I'm asking you what you were going to do with it. Do you remember which officer that was?
A. The bald guy.
 Q. Is he the officer with the dog?
A. No, sir.
Q. All right. Please continue.
 A. He asked me what I was going to do with it. I said it's a butter knife, I'm going to put it in the sink. And after that, I was struck from behind. I don't remember very much after that because I had to be knocked unconscious and in and out of consciousness, anyway.
Transcript of Trial at 236-237. Appellant also testified at trial that he would not be "ignorant" enough to confront the officers since "I have been in my share of trouble, and I have witnessed people being — I mean, people in jail with myself that have been shot, and I wouldn't risk my life at all as concerning officers and a knife." Transcript of Trial at 242. Based upon appellant's own testimony at trial, the jury could not have reasonably concluded that appellant's conduct fell within any of the subsections to R.C. 2917.11 set forth above since, according to appellant, appellant was acting passively when he was struck by Officer Clark. As evidenced by his own testimony, appellant was not being belligerent, obnoxious or threatening in any manner at the time of his confrontation with Officer Clark. Clearly, based on Officer Clark's testimony and the other evidence presented at trial, the only reasonable choices the jury had were either to find appellant guilty or not guilty of assaulting Officer Clark. We find, therefore, that the trial court did not err in failing to instruct the jury on disorderly conduct. We further find that the trial court's failure to give a jury instruction on disorderly conduct was not error since appellant's defense at trial was a complete defense to the offense of assault. "If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier will not be permitted to consider a lesser included offense for the reason that an unreasonable compromise would be invited on the State's evidence." State v. Nolton (1969), 19 Ohio St.2d 123 [19 Ohio St.2d 133]. At trial, appellant denied that he lunged at Officer Clark or assaulted him in any manner. Since appellant, therefore, pursued a complete defense at trial, the trial court did not err in declining to give a jury instruction on disorderly conduct. See State v. Douglas (July 25, 1994), Stark App. No. CA 9548, unreported. For the foregoing reasons, appellant's first assignment of error is overruled.
 II
Appellant, in his second assignment of error, contends that his conviction for resisting arrest is against the manifest weight and the sufficiency of the evidence. We disagree. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. Appellant was convicted of violating R.C. 2921.33(C)(2). Such section provides in relevant part as follows: (C) No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person if either of the following applies: (2) The offender, during the course of resistance or interference, brandishes a deadly weapon.
From the evidence presented at trial, we do not find, as a matter of law, that appellant's conviction for resisting arrest was based on insufficient evidence. Testimony was adduced at trial that appellant, who testified that he believed the officers were at his apartment to arrest him based on Travis's telephone call, refused to allow the officers to enter the apartment without a warrant or to come outside. Despite the officers' repeated commands to drop the steak knife with serrated edges that he was holding, appellant refused to do so while threatening to kill the officers. For such reason, the officers were forced to enter the apartment. When Officer Clark confronted appellant in the apartment, he again ordered appellant to put down the knife and surrender. At such point, appellant lunged at Officer Clark with the knife while threatening to "kill both of you mother fuckers." Transcript of Trial at 140. Based on the foregoing, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of resisting arrest proven beyond a reasonable doubt. There was competent, credible evidence presented at trial that appellant, recklessly or by force, interfered with his lawful arrest while brandishing a deadly weapon in the form of a steak knife. While appellant argues that his conviction for resisting arrest was against the manifest weight of the evidence, we find that the jury did not lose its way so as to create a manifest miscarriage of justice. The jury, as trier of fact, clearly had the opportunity to observe the witnesses' demeanor, including that of appellant, and to assess their credibility. Clearly, while the jury found the officers' testimony credible, it found appellant's testimony that he did not resist arrest to be less than credible. Appellant's second assignment of error is, therefore, overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.
Gwin, P.J. and Hoffman, concurs